# Wytheville.

## W. R. ASHBURN, ET ALS. v. M. C. ALLEN, ET ALS.

### June 14, 1928.

Argued and submitted before Judge Holt took his seat.

1. PRIVATE SCHOOLS—*Lease by the Board of Trustees of the Property of the School to a County School Board—Whether Trust Created by Donation—Case at Bar.*—The instant case was a suit for injunction by complainants, the minority members of the board of trustees of a private school, organized for the special education of negro youth and supported by charitable contributions, against the majority members and a county school board to enjoin the lease of the school property to the county school board for a period of twenty years, with a perpetual right of renewal to be operated as a public school. The complainants contended that there was a special continuing trust created by the original donors of the property and fund, which the court must enforce. The funds had apparently been properly used and exhausted in the maintenance of the school. The property remaining, real and personal, had been conveyed to the corporation without reservation by the donors and without condition or trust.

   *Held:* That no trust had been created but the property was held subject only to the charter of the corporation.

2. PRIVATE SCHOOLS—*School Organized for the Education of Negro Youth under Sections 3872-3880 of the Code of 1919—Precedents in Suit to Enjoin Lease of School Property.*—A private school for the education of negro youth was organized under sections 3872-3880 of the Code of 1919. In a suit to enjoin the board of trustees from leasing the property of the school to a county school board, authorities cited and precedents, other than those based upon statutes substantially similar, are of little value.

3. PRIVATE SCHOOLS—*School Organized for the Education of Negro Youth under Sections 3872-3880 of the Code of 1919—Case at Bar.*—Sections 3872-3880 of the Code of 1919 clearly authorized an amendment to the charter of a school organized thereunder for the education of negro youth permitting a lease of the property of the school, and as the amendment in question appeared to have been, in every respect, legally made, the trustees have the power to lease thereby expressly conferred.

4. PRIVATE SCHOOLS—*School Organized for the Education of Negro Youth under Sections 3872-3880 of the Code of 1919—Power to Lease does not Confer the Power to Dissolve—Case at Bar.*—A power to lease the property of a private school organized for the education of negro youth under sections 3872-3880 of the Code of 1919, cannot be construed to be a power to dissolve, in effect, or abandon all the purposes for which the corporation was organized. And in the instant case, a suit to enjoin the lease of the property of the school to a county school board, the lease not being in the record, it was impossible for the Supreme Court of Appeals to determine whether it was in effect an abandonment of the purposes of the corporation, or a lease of the property authorized by an amendment to the school charter.

5. PRIVATE SCHOOLS—*School Organized for the Education of Negro Youth under Sections 3872-3880 of the Code of 1919—Dissolution—Distribution of Property—Case at Bar.*—Section 3880 of the Code of 1919 provides for the winding up and dissolution of corporations organized under sections 3872-3880 of the Code of 1919, and further provides for the distribution of the surplus from the sale of the corporation's property to those equitably entitled thereto, and if there be none, to the literary fund of the State. In a suit to enjoin a lease of the property of a private school organized under the statute for the education of negro youth to a county school board, it is first essential to determine from the evidence whether the principal objects and purposes of the company have failed, either entirely or partially. If they have failed partially, the trustees, without abandoning the charter, may have it amended and so provide that it may continue as far as may be to perform such of its original purposes as may be found to be practicable. If the purposes of the corporation have entirely failed (and this can only be intelligently determined after proper evidence pro and con has been introduced), then it would seem that nothing was left to be done, except to dissolve the corporation and distribute its assets under section 3880 of the Code of 1919.

6. PRIVATE SCHOOLS—*Lease by the Board of Trustees of the Property of the School to a County School Board—Suit for Injunction by Minority Members of the Board of Trustees—Case at Bar.*—The instant case was a suit for injunction by complainants, the minority members of the board of trustees of a private school, organized for the special education of negro youth and supported by charitable contributions, against the majority members and a county school board to enjoin the lease of the school property to the county school board for a period of twenty years, with a perpetual right of renewal to be operated as a public school. There was an averment that there was no authority in the charter authorizing the lease, but after the

filing of the bill in the instant case the charter was amended expressly authorizing the board of trustees to lease the property. No depositions were taken in the case and the lease did not appear in the record.

*Held:* That while under the amendment of the charter the trustees had the authority to make such a lease, yet in the state of the record the Supreme Court of Appeals could not express an opinion as to the validity of the lease in question, because it was not before it.

7. PRIVATE SCHOOLS—*School Organized for the Education of Negro Youth under Sections 3872-3880 of the Code of 1919—Power of Board of Trustees—Lease of Property of School.*—The instant case was a suit to enjoin the board of trustees of a private school organized for the education of negro youth from leasing the property of the school to a county school board to be operated as a public school. In such a case the court should neither revise nor supervise the discretion of a majority of the board of trustees of such a corporation upon any matter of policy, the responsibility for which rests upon the board. Under the issues here raised, however, proper testimony should be first submitted, and the court should then decide, as a matter of fact, whether the objects for which the corporation was organized have wholly or partly failed, and having decided this question of fact, should also determine whether the lease proposed, or executed, is, under the charter as amended, within the powers of the board, or constitutes an abuse of discretion.

Appeal from a decree of the Circuit Court of Southampton county. Decree for defendants. Complainants appeal.

*Reversed and remanded for further proceedings.*

The opinion states the case.

*John N. Sebrell,* for the plaintiffs in error.

*R. E. L. Watkins* and *Jas. H. Corbitt,* for the defendants in error.

PRENTIS, P., delivered the opinion of the court.

This is a controversy between the appellants, who are four of the eleven members of the board of trustees of the Franklin Normal and Industrial Institute, as complainants, and the seven other members of that board, and the county school board of Southampton county, as defendants.

The Franklin Normal and Industrial Institute is a corporation organized under the Virginia statute without capital stock. The purposes for which it was formed were to provide a school in which colored youth might be instructed in the common school and academic branches of knowledge, and receive Christian culture and training in the industrial arts. The board is a self-perpetuating body.

The bill alleges in general terms the purpose of those who organized the school to establish and conduct a private school and that by the aid of persons who were charitably disposed and through the contributions of various churches, societies and individuals the corporation acquired commodious buildings and sufficient funds to meet the financial needs of the school and to conduct it successfully since 1906. Among other things, it is alleged that "all of these contributions have been made under the assumption and assurance on the part of the trustees that the school would be continued to be operated according to and in pursuance of the original design and for the higher and special education of the negro youth, not only of Southampton county, but elsewhere as well, and not only in the subjects taught in the public schools in Virginia, but also in the industrial and domestic sciences and arts, and in higher education, and in religious training and teaching, although non-sectarian in character; that the school for more than twenty years has been successfully operated in fulfilment of such purposes, and the said

Franklin Normal and Industrial Institute has year after year turned out, educated young men and young women, in various parts of Virginia and elsewhere, some of them being trained specially in the art of teaching, and have attained success, and have done service in the public and private schools of Virginia."

It is also alleged that the institution is free from debt, and owns its property in fee. Then there is this averment, which forms the substance of the complaint: "That a bare majority of the trustees of said Franklin Normal and Industrial Institute have attempted to make a contract, the effect of which would be to lease the said property to the public school board of Southampton county for the period of twenty years, with the perpetual right in said school board to renew the lease at the expiration of each twenty-year period for no consideration whatsoever except the probability that the said school board will operate same as a public school, according to the rules and requirements of the public school system. The said county school board, however, does not agree nor undertake to operate said school, except as it may desire to do, and if it shall so operate a school on the premises, the same will be operated as shall be determined exclusively by said county school board, without any control, direction, or participation of any kind by the trustees of said Franklin Normal and Industrial Institute." There is an averment that there is no authority in the charter, or otherwise, to lease the property, and that the purpose of the charter was the operation of a private school by and under the control and direction of the trustees, duly elected and appointed, and of a different character from schools operated by the county school board under the public school system, and that the attempt on the part of the trustees to delegate their

powers and duties to the county school board is unwarranted, unauthorized and *ultra vires;* and that this action of a majority of the trustees is an unwarranted abuse of the powers and duties conferred on them by the charter of the institute, and is a surrender of the charter and of their functions thereunder.

There are other allegations of the same general character, which in our view of the case at this time it is unnecessary to recite.

There is a prayer for an injunction, and a temporary injunction was awarded.

The seven other trustees filed their answer and cross-bill, undertaking to justify their action. We recite so much of this as seems to be material.

They allege that sufficient funds to meet the financial needs of the school have never at any time been obtained, but that the institution was enabled to operate by the personal sacrifice of one Mrs. D. I. Haden, who by reason of her interest and enthusiasm for the success of the institution, contributed of her time and money for the operation of the school until her death in 1924; that the contributions which were made were to meet the accruing needs, but with no assurance that there would be funds for the future continuance of the school, and the trustees have at no time given assurance of its continuance; that the trustees have diligently sought means and methods by which to operate the institution to meet the requirements essential to the pursuance of the original design, and for the higher and special education of the negro youth, not only of Southampton county, but elsewhere as well, but finding funds unavailable and with no resources except such as public charity has provided, found it necessary in order to meet the requirements of the charter, that the institution be continued for

educational purposes, and in pursuance of that idea have leased the property to the Southampton county school board, to be used exclusively for colored youth in instructing them in the common school branches of knowledge, and to receive such culture and training as may be extended by the public schools of Virginia, and upon the condition that the county school board should erect upon the land a modern brick school building for the exclusive use of the negro race. They aver that by so doing they believe and state that the use of the property for this purpose will meet the spirit of the purpose for which it was originally designed. They further allege that under the existing conditions the property will ultimately fail in all the purposes for which it was originally designed, unless the course which has been adopted by them is pursued, while their course gives absolute assurance of the continuation of the property for educational purposes exclusively for the colored youth and puts the guarantee of the Commonwealth of Virginia behind the proposition.

Referring to the allegation that the corporation is free from debt, they aver that the buildings are in need of repair, and in a little while will have no value; that they were erected through the contributions of churches, societies and individuals, but that these were acts of charity and were done to aid Mrs. Haden in the execution of her conception of an institution for her race, but that since her death there has been no assurance of any consequence given to the trustees as to the future provision of means with which to operate the school, and that the trustees are without means to support the institution as an independent school; that they have voted to enter into the contract with the Southampton school board in promotion of the

spirit and purpose of the charter; that the lease has been entered into in the performance of the trust, looking to the betterment of the school property for the colored race, and they feel that they have met the requirements of the charter, and pray for the approval of the lease made by them to the county school board.

They also show that after the date of the filing of the bill, an amendment of the charter was granted, which expressly authorizes the board of trustees of the Franklin Normal and Industrial Institute to lease the property of that corporation to any corporation, or individual, or individuals, to make any contract with any such corporation, individual or partnership, or with any subdivision of the educational system of the State, for the lease, use or occupation of the property now under the control of the trustees, with full power to the trustees to fix the terms, conditions and considerations for the said property, provided only that the lessee or other persons or corporations to whom the property or its use or control may be transferred, shall use it only for educational purposes in connection with the colored boys and girls who may be admitted thereto; with power also to make improvements, alterations and changes in the buildings now owned by the corporation, and to authorize their removal from the property, and to permit the lessee to erect other buildings on the property for school purposes, upon such conditions as the trustees may deem best. If the allegations of the answer are true, the executors of such a lease would be a valid exercise of the powers conferred.

There were no depositions taken upon the issues thus raised, but there were certain affidavits by two of the dissenting or minority trustees, and one by Rev. M. C. Holland, now an ordained minister of the gospel ,

living at Newport News, Va., but who had spent most of his life at Franklin where the school is located. It is agreed that these affidavits are to be read as depositions regularly taken and we assume that the trial court, in entering its decree, also considered the answer and cross-bill, which was verified by affidavit of one of the trustees, as responsive to the bill and as having the weight of an affidavit as answer under oath was expressly waived in the bill.

This being the state of the record, the court entered an order from which this appeal is taken, which simply denies the relief sought and dismisses the bill.

We observe, as a matter of supreme importance in connection with the issues raised, that the lease, or proposed lease, does not appear in the record. Of course, this must be in writing, and constitutes the original and best evidence of its provisions.

[1] It seems to us manifest that the claim of the minority trustees, that there is some special and continuing trust created by the original donors of the property and fund, which the court must enforce, cannot be maintained. The funds have apparently been properly used and exhausted in the maintenance of the school. The property remaining, real and personal, was conveyed to the corporation without reservation by the donors and without condition or trust. It is now held subject only to the charter.

[2–4] The powers granted and the duties imposed upon such a corporation are regulated by the statute under which it was organized—that is, by a chapter of the original act concerning corporations, now Code, sections 3872 to 3880, inclusive. This being true, the authorities cited and precedents, other than those which are based upon statutes substantially similar, are of little value. Those sections clearly authorize

the amendment which permitted a lease of the property, and as this amendment appears to have been, in every respect, legally made, the trustees have the power to lease thereby expressly conferred. It is quite clear, however, that the mere power to lease cannot be construed to be a power to dissolve, in effect, or abandon all the purposes for which it was organized. The lease not being in the record, it is impossible for us to determine whether it was in substance and effect an abandonment of the purposes of the corporation, or a lease of the property which was authorized by the amendment.

As we have stated, the corporation is controlled by the statute which we have cited. That statute, section 3880, provides that "whenever the principal objects and purposes for which such corporation was formed has failed, or the management of the corporation has been abandoned by its trustees, directors, or managers, it shall be lawful for the circuit court of the county, or the circuit or other court having jurisdiction in the city wherein the principal office of such corporation is located, sitting in chancery, to wind up and dissolve such corporation and to make such disposition of its assets as may be just and equitable, in a suit brought by a creditor, or by one-fifth in number of the active members of such corporation." This section further provides that the surplus arising from the sale of its property may be distributed to those who may be equitably entitled thereto, and if there be none such, must be paid into the literary fund of the State.

[5] Under the issues of fact here raised, it is first essential to determine from the evidence whether the principal objects and purposes of the company have failed, either entirely or partially. If they have failed partially, the trustees, without abandoning the charter,

may have it amended and so provide that it may continue as far as may be to perform such of its original purposes as may be found to be practicable. If the purposes of the corporation have entirely failed (and this can only be intelligently determined after proper evidence pro and con has been introduced), then, without meaning so to decide, it seems that there is nothing left to be done probably, except to dissolve it and distribute its assets under Code, section 3880.

[6] We are unwilling, in the present state of the record, to express any opinion as to the validity of the lease referred to in the pleadings, because it is not before us.

[7] The court should neither revise nor supervise the discretion of a majority of the board of trustees of such a corporation upon any matter of policy, the responsibility for which rests upon the board. Under the issues here raised, however, proper testimony should be first submitted, and the court should then decide, as a matter of fact, whether the objects for which the corporation was organized have wholly or partly failed, and having decided this question of fact, should also determine whether the lease proposed, or executed, is, under the charter as amended, within the powers of the board, or constitutes an abuse of discretion.

Our conclusion, then, is to reverse the decree without prejudice and remand the case to the trial court for further proceedings, with directions to the defendants to file the lease for construction, and with leave either to the complainants or the defendants to take further evidence, if they shall be so advised.

*Reversed and remanded for further proceedings.*